UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **EVELYN CAROLYN JEANE, ET AL.** | : | **CIVIL ACTION NO. 2:17-cv-0891** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **WAL-MART STORES, INC., ET AL.** | : | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court is a Motion for Summary Judgment filed by Aramark Uniform and Career Apparel, LLC ("Aramark") and its insurer, ACE American Insurance Company (collectively, "movants"). Plaintiffs Evelyn and Willie Jeane and codefendants/cross-claimants Wal-Mart Louisiana, LLC and Wal-Mart Stores, Inc. ("Wal-Mart") oppose the motion. Docs. 129, 134. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this court.

### I.
#### BACKGROUND

This action arises from an accident allegedly suffered by plaintiff Evelyn C. Jeane at a Wal-Mart store in Leesville, Louisiana, on June 22, 2016. Doc. 1, att. 2, p. 3. She alleges that she was injured after slipping in the produce aisle, in a liquid spilled as a result of a leaking produce cooler and/or through repair of same by Wal-Mart's maintenance subcontractor, Master Technicians and Mechanical, LLC ("Master Tech"). *Id.* at 4. Accordingly, Jeane and her husband filed suit against Wal-Mart, Master Tech, and Master Tech's insurer in the 30th Judicial District Court, Vernon Parish, Louisiana, on May 30, 2017. *Id.* at 3–7. Wal-Mart then removed the suit to this court based

on federal diversity jurisdiction, 28 U.S.C. § 1332. In May 2018, after reviewing video surveillance that showed an Aramark employee handling potentially wet mats near the accident site, plaintiffs filed a first supplemental and amending petition raising claims against Aramark (Wal-Mart's floor mat vendor) and its insurer, ACE. Doc. 36. Aramark and ACE now move for summary judgment on the issue of Aramark's liability. Doc. 122; doc. 122, att. 2. The motion is now fully briefed and ripe for review.

## II.
### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 106 S.Ct. at 2511 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). The court is also required to view all evidence in the light most favorable to the non-

moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
#### APPLICATION

#### A. *Legal Standards*

Under *Erie Railroad Co. v. Tompkins*, 58 S.Ct. 817 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *See Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Liability in Louisiana negligence case is determined through a duty/risk analysis. *Long v. State ex rel. Dep't of Transp. and Dev.*, 916 So.2d 87, 101 (La. 2005). Under this analysis, the plaintiff must establish the following elements: (1) that the defendant had a duty to conform his conduct to a specific standard; (2) that the defendant failed to conform to this standard; (3) that the defendant's substandard conduct was the cause in fact of the plaintiff's injuries; (4) that the defendant's substandard conduct was the legal cause of plaintiff's injuries; and (5) actual damages. *Id.* Cause in fact is a factual determination. *Chaisson v. Avondale Indus., Inc.*, 947 So.2d 171, 187 (La. Ct. App. 4th Cir. 2006). In a case involving concurrent causes of an accident, the proper inquiry is whether the defendant's conduct was a substantial factor in bringing about the event. *Id.*

#### B. *Application*

The movants assert that there is no genuine issue of material fact as to whether Aramark had a duty to protect shoppers from the wet floor conditions. They also argue that there is no evidence that Aramark contributed to the water in which Evelyn Jeane slipped. Doc. 122, att. 2, pp. 6–9. Plaintiffs and Wal-Mart insist that Aramark owed a duty to shoppers through the services

it provides at Wal-Mart, and that record evidence shows that an Aramark employee's negligent exercise of his duties played a substantial factor in Evelyn Jeane's fall.

Duty is generally defined as the obligation to conform one's behavior to a standard of care associated with a reasonable person under the circumstances. *Chaisson*, 947 So.2d at 180. Accordingly, "[t]here is an almost universal duty on the part of the defendant in negligence cases to use reasonable care so as to avoid injury to another." *Id.* at 180–81 (quoting *Boykin v. La. Transit Co., Inc.*, 707 So.2d 1225, 1231 (La. 1998)). In determining the existence of a duty-risk relationship, Louisiana courts employ an ease of association test. *E.g.*, *Holloway v. Midland Risk Ins. Co.*, 759 So.2d 309, 313 (La. Ct. App. 2d Cir. 2000). The inquiry under this test is how easily the plaintiff's complained-of harm can be associated with the defendant's conduct. *Id.*

Aramark asserts that no duty existed, and no breach can be established, because it performs a "very circumscribed service" for Wal-Mart. Under the terms of its Linen Services Agreement, Aramark provides, it was "hired by Wal-Mart to deliver fresh floor mats on a regular basis and replace the dry dirty mats." Doc. 122, att. 6, p. 1 ¶¶ 3–6. It further provides that the mats are in Wal-Mart's exclusive control outside of the delivery/pickup and that, if an employee discovered a wet, dirty mat, he would not remove it until it was dry. *Id.* at ¶¶ 7–9.

Store surveillance video shows that the leaking produce cooler was bordered by a floor mat and blocked off with orange cones as of 9:15 am on the morning of June 22, though store employees and customers crossed the cones to access the produce shelves. Doc. 122, att. 4, 0:00. At approximately 10:41 am, a Master Tech employee arrived, moved one of the mats, and began repairing the leak. *Id.* at 1:26:00. At approximately 10:53 am, an Aramark employee began removing mats from another aisle on the perimeter of the produce section, adjacent to the leak aisle. *Id.* at 1:38:00. He placed the removed mats into a cart and departed the area at approximately

10:55 am, leaving the mats in the leak aisle (where repair work continued) in place. *Id.* at 1:40:00. At approximately 11:06 am, Evelyn Jeane approached the adjacent aisle, from which the Aramark employee had just removed the mats, from the other end of the produce section and slipped in the middle of that aisle. *Id.* at 1:51:00. Jim DeLong, the Aramark employee who serviced Wal-Mart on that date and was seen in the surveillance footage, testified that he had been instructed not to handle wet mats and that he did not handle any wet mats on the date of the accident. Doc. 122, att. 7, pp. 18–19. Instead, he stated, his practice when he came to a wet mat was to leave it in place and simply put a clean mat beside it.[1] *Id.*

Record evidence, however, shows an Aramark employee's potential involvement in moving wet mats around the area where Evelyn Jeane slipped. Although movants assert that the video is ambiguous and insufficient to show a genuine issue of fact, there is sufficient circumstantial evidence to refute DeLong's contentions and allow plaintiffs to withstand summary judgment on this claim. Wal-Mart employees testified that they saw wet mats – in other words, more than one – in the produce section just after the accident, supporting the existence of water in the area where DeLong was handling mats. Doc. 129, att. 5, pp. 7–8 (Teresia Quinones deposition); doc. 129, att. 6, p. 6 (Marvin Arnold deposition). Evelyn Jeane slipped in the adjacent aisle, where DeLong was changing mats, rather than in the leak aisle. Doc. 122, att. 4, at 1:50:00–1:52:00. Finally, the surveillance video shows DeLong wiping his hands with a towel, as though drying them, after dragging one mat across the floor in the adjacent aisle. Doc. 122, att. 4, at 1:39:00. DeLong testified that he never handled wet mats and that this gesture was only meant to wipe dirt or sweat from his hands. Doc. 122, att. 7, pp. 23, However, this testimony is insufficient to

---

[1] Additionally, Evelyn Jeane recalled that the water she saw in that aisle was clear and free of dirt. Doc. 122, att. 5, pp. 61–62. Aramark asserts that Jeane's testimony is inconsistent with any claim that the water dripped from a dirty floor mat. Doc. 122, att. 2, p. 8. There is no evidence, however, of how dirty the mat was, or of Evelyn Jeane's eyesight.

overcome the circumstantial evidence surrounding the video or to show that Aramark employees could not possibly have behaved in a negligent manner with respect to the spill area and their handling of floor mats therein.

Genuine issues of fact remain as to whether DeLong, in the course of his duties for Aramark, handled a wet mat in the aisle where Evelyn Jeane slipped a short time later and whether he handled that mat in a manner that might have caused or contributed to the presence of water in the aisle. Resolving these issues in favor of non-movants, the court cannot find that Aramark (1) had no duty with respect to Wal-Mart shoppers in the handling of floor mats and (2) committed no breach of that duty. Moreover, the court cannot determine on the evidence provided whether any such breach by Aramark would have been a substantial cause of the accident given any negligence by Wal-Mart and/or Master Tech in handling the leak. Accordingly, summary judgment is not appropriate in this matter and the motion must be denied. The court does not consider plaintiffs'/Wal-Mart's other arguments, relating to the equipment used by DeLong and Aramark's other policies.

## IV.
### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Motion for Summary Judgment [doc. 122] be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon

grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

      THUS DONE AND SIGNED in Chambers this 17th day of April, 2019.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE